[No. 7954.  *En Banc.*  October 9, 1909.]

THE STATE OF WASHINGTON, *on the Relation of Frederick V. Pindall, Plaintiff,* v. E. W. ROSS, *Commissioner of Public Lands, Respondent.*[1]

PUBLIC LANDS — MINES AND MINERALS — LEASES — STATUTE—CONSTRUCTION. The commissioner of public lands is not limited in the execution of leases of state mineral lands, for prospecting purposes, to the government legal subdivisions of a section, by the proviso to Laws 1901, p. 313, authorizing the changing of boundaries to conform to the section lines, since the law permits a lease for "any amount not to exceed eighty acres," and should not be construed to authorize the leasing of other than mineral lands.

STATUTES—CONSTRUCTION BY EXECUTIVE DEPARTMENTS. The construction placed upon a statute by the executive department does not control the courts when it deprives a citizen of valuable rights accorded him by the law.

PUBLIC LANDS—MINES AND MINERALS—LEASES—DISCRETION. Laws 1901, p. 313, providing for the leasing of state lands to the discoverer of previous minerals, leaves no discretion in the commissioner of public lands where the law has been complied with.

Application filed in the supreme court March 22, 1909, to compel the commissioner of public lands to execute a lease for state lands containing deposits of minerals.  Granted.

*Myron A. Folsom* and *Alex M. Winston,* for petitioner.

*The Attorney General,* for respondent.

PER CURIAM.—Section 2 of the act of March 17, 1897 (Laws 1897, p. 293), relating to the mineral lands of the state, provides that:

"Any citizen of the United States, finding precious minerals upon any lands belonging to the State of Washington, may apply to the commissioner of public lands for a lease of any amount of land not to exceed the amount of land allowed by the United States mining laws for locating and recording mining claims, and the same dimensions."

[1]Reported in 104 Pac. 216.

This section was amended by §1 of the act of March 18, 1901 (Laws 1901, p. 313,) to read as follows:

"Any citizen of the United States, finding precious minerals upon any lands belonging to the state of Washington, may apply to the commissioner of public lands for a lease of any amount not to exceed eighty acres for prospecting purposes, provided that said applicant has posted up location notice and set corner posts and marked boundary lines as required by the mining laws of the state of Washington: *Provided*, Any person, persons, or corporations to whom a lease or contract has been issued prior to the passage of this act may, by applying to the commissioner of public lands, have the boundaries of their mineral claims or lots changed to conform to the section lines as surveyed by the U. S. surveyors: *Provided*, The changing of boundaries does not infringe upon the rights of any other lease holder or assignee, and shall pay a fee according to the increased area which they may obtain."

On the 12th day of November, 1908, the relator discovered precious minerals on certain state lands in Stevens county, described as the south half of the northwest quarter, and the north half of the southwest quarter, of section 16, township 30, north, range 42, E. W. M., and located fifteen hundred feet in length along the vein or lode, and six hundred feet in width, marking the boundaries of the claim in conformity to the laws of the United States and of this state. He thereupon made application to the commissioner of public lands for a lease of the lands thus located, and tendered the fee prescribed by law. The application was rejected by the commissioner, on the sole ground that he had no authority under the law to execute a lease of any state lands other than a legal subdivision of a section according to public surveys. The relator thereupon applied to this court for a writ of mandamus, and the case is now before us for consideration on the foregoing facts, which are not controverted.

Three questions have been presented and discussed by counsel in their briefs and oral arguments: (1) Did the commissioner of public lands correctly construe the law; (2) should

this court adhere to and adopt the construction placed upon the law by the officer charged with its administration; and (3) has the commissioner a discretion in the matter of executing leases where the law has been fully complied with.

The first question must be answered in the negative. The original act of 1897 limited the quantity of land that might be included in any one lease to not exceed the amount "allowed by the United States mining laws for locating and recording mining claims, and the same dimensions." By §2320 of the Revised Statutes of the United States, mining claims upon veins or lodes of quartz, or other rock in place, cannot exceed fifteen hundred feet in length along the vein or lode, or three hundred feet on each side of the middle of the vein at the surface. Mining claims of this character must conform to the vein or lode, and it would be impracticable, if not impossible, to make them likewise conform to the public surveys. Congress recognized this difficulty, for §2327 of the Revised Statutes expressly provides that they need not. The laws of the state should not be so construed as to require or authorize the leasing of other than mineral lands for mining purposes, yet, under the construction adopted by the commissioner, it would be practically impossible to exclude nonmineral lands from mining leases.

It is very apparent that the original act of 1897 had no reference to the public surveys or legal subdivisions of sections, and the principal object of the amendatory act of 1901 was to enlarge the area that might be leased. There is nothing in the amendatory act indicating that the boundaries should be limited or controlled by the public surveys, except a proviso that persons who had obtained leases prior to its passage might have their boundaries changed to conform to section lines. This proviso does not, in our opinion, change the scope and meaning of the entire act, or limit the power of the commissioner to lease by legal subdivisions of sections only.

(2)   We are not unmindful of the rule that the construc-

tion placed upon a statute by the department or officer charged with its administration is entitled to weight and consideration in the courts, but, as said by the supreme court of the United States in *United States v. Dickson*, 15 Pet. 141, 10 L. Ed. 689:

"The construction so given by the treasury department to any law affecting its arrangements and concerns, is certainly entitled to great respect. Still, however, if it is not in conformity to the true intendment and provisions of the law, it cannot be permitted to conclude the judgment of a court of justice . . . It is not to be forgotten that ours is a government of laws, and not of men; and that the judicial department has imposed upon it, by the constitution, the solemn duty to interpret the laws in the last resort; and however disagreeable that duty may be in cases where its own judgment shall differ from that of other high functionaries, it is not our liberty to surrender, or to waive it."

And in the case before us, we do not think that the erroneous construction adopted by the land commissioner should be permitted to deprive a citizen of a valuable right accorded to him by the laws of the state.

(3) Nor do we think the law has vested any discretion in the commissioner, where the applicant for a lease has fully complied with its provisions. The act was doubtless passed in pursuance of the liberal policy that has ever marked the conduct of the general government in disposing of its mineral land, and should be so construed as to effectuate the legislative intent. There is nothing in the act itself to indicate an intention on the part of the legislature to vest a discretion in the commissioner, and no harm can result from withholding it, while untold injury might result to individuals from its recognition.

The writ will therefore issue as prayed.