[No. 14920. Department One. October 15, 1918.]

THE STATE OF WASHINGTON, *on the Relation of E. A. Sims, Plaintiff,* v. CLARK V. SAVIDGE, *as Commissioner of Public Lands, Respondent.*[1]

MINES AND MINERALS (1-A)—LEASE OF STATE LANDS—STATUTES—CONSTRUCTION—IMPLIED REPEALS. Laws 1917, p. 599, amending Rem. Code, § 6783, as to applications for lease of state lands for mining purposes, so as to require the application to be made by legal subdivisions according to the public land surveys, impliedly repeals other provisions of the law requiring, as a condition precedent to a lease, that the applicant set corner posts and post location notices as required for the location of mineral claims upon the government domain.

Application filed in the supreme court August 3, 1918, for a writ of mandamus to compel the commissioner of public lands to issue a lease for mining prospecting purposes on state lands. Granted.

*Kerr & McCord,* for relator.

*The Attorney General* and *John A. Homer, Assistant,* for respondent.

[1]Reported in 175 Pac. 568.

PARKER, J.—The relator Sims seeks a writ of mandate from this court to compel the state land commissioner to issue to him a lease for mining prospecting purposes covering eighty acres of state land, described as the west ½ of the N. W. ¼ of section 36, township 27, north, of range 2, west, in Jefferson county.

The facts upon which Sims seeks to have the lease issued to him may be summarized from his petition, which is resisted by general demurrer only, as follows: Sims, having found precious minerals upon the lands which he seeks to lease, on June 26 last, applied to the state land commissioner for a lease thereof for the term of two years for mining prospecting purposes. The application was made as prescribed by law and the regulations issued by the land commissioner and was accompanied by the required fee. The land belongs to the state and is subject to being leased for mining prospecting purposes. The commissioner "refused to accept said application for the lease of said lands for prospecting purposes upon the sole ground that the said application failed to show that said mineral lands had been located in accordance with the provisions of the laws of the United States and of the state of Washington regulating the location of mineral claims upon the Federal domain, and that said application did not disclose that notices of said location had been posted and corner posts established to mark the boundary lines of the location."

It is conceded in the briefs of counsel that the question here for determination is as to whether or not it is a prerequisite of Sims' right to have a lease for this land issued to him for mining prospecting purposes that he shall have posted location notices and set corner posts marking the boundaries of the land as required by the statute relating to the location of mineral claims

upon United States government lands. It seems plain that, under the act of 1897 and the amendments thereto prior to the amendment of 1917, it was necessary that there be notices of location posted upon the land and the marking of the boundaries thereof by the applicant, as in the location of mineral claims upon United States government lands, before he would have a right to a lease thereof for prospecting purposes. But whether or not the amendment of 1917 has rendered unnecessary the posting of notices and marking of the boundaries as in the case of locating mineral claims upon United States government lands is the real question here to be determined.

Referring to § 6782 and following of Remington's Code, we find the act of 1897, as amended, relating to the leasing of state lands for mining prospecting and development purposes, prior to the amendment of 1917, in so far as we need here notice its terms, as follows:

Section 6782 reads:

"The commissioner of public lands of the state of Washington is hereby authorized to execute leases and contracts for the mining of gold, silver, copper, lead, cinnabar or other valuable minerals except coal, from any land or tide and shore lands belonging to the state or from any lands or tide and shore lands to which the state may hereafter acquire title, subject to the conditions hereinafter provided . . ."

Section 6783 reads:

"Any citizen of the United States finding precious minerals upon any lands belonging to the state of Washington may apply to the commissioner of public lands for a lease of any amount not to exceed eighty acres for prospecting purposes, provided that said applicant has posted up location notice and set corner posts and marked boundary lines as required by the mining laws of the state of Washington; . . ."

Section 6784 reads:

"The manner of locating a mineral claim upon state land shall be similar to the state law regulating locating mineral claims on government lands . . ."

Section 6786 reads:

"Before any lease shall be granted, the applicants shall pay to the state treasurer the sum of five dollars for each forty acres or fraction thereof. The holder of a mineral lease, secured as above stated, shall have two years to develop said mine or mines: Provided, that no more than five tons of ore shall be removed therefrom for assaying or testing purposes until a contract, as hereinafter provided, shall have been executed."

Section 6787 provides for a working mining contract or lease for the land, to be entered into between the applicant and the state at any time prior to the expiration of the two-year period covered by the lease for prospecting purposes, covering a period of not exceeding thirty years.

In *State ex rel. Pindall v. Ross,* 55 Wash. 242, 104 Pac. 216, decided in 1909, while the law was as above quoted, it was held that an applicant for a lease of state land for prospecting purposes, having complied with the law as then existing, the lands so applied for being subject to such a lease, had a right to have such lease issued to him, and to that end have the commissioner mandamused to issue the same. It was also held in that case that the land the applicant was entitled to have leased to him need not conform in its boundaries to the legal subdivisions according to the government survey, though the maximum eighty acres was applied for. This was in harmony with and in recognition of the provisions of the law as then existing requiring location notices and a description of the boundaries of the land as in the location of mineral claims upon United States government lands.

The legislature of 1917 again amended section 6783 so as to read as follows:

"Any citizen of the United States finding precious. minerals upon any lands now or hereafter belonging to the state of Washington, may apply to the commissioner of public lands for a lease of any amount not exceeding eighty acres, for prospecting purposes, such application to be made by legal subdivisions according to public land surveys." Laws of 1917, p. 599.

Some other amendments to the law were then made, but they do not concern us here.

Did the portions of the amendment of 1917 providing, in effect, that the lease shall be for lands "by legal subdivisions according to the public land surveys" have the effect of repealing and rendering of no force those provisions of the law theretofore existing, and above quoted, calling for notices of location and marking of the boundaries of the land upon the ground as provided by the laws relating to the location of mineral claims upon United States government land? We think this question must be answered in the affirmative, though the act of 1917 is in terms not an independent act but an amendment of the act of 1897, as theretofore amended, and does not in terms repeal those provisions of the act of 1897 as amended, relating to location notices and the marking of boundaries, above quoted. We have not overlooked the general rule that repeals by implication are not favored, but it seems to us that, by the 1917 amendment, there is evidenced a legislative intent to substitute an entirely new method of designating and describing lands leased for prospecting purposes. That is, with reference to official government survey monuments already in existence. We conclude that no other designation or description of the land is required by the law as now amended, and that relator Sims is entitled to have a lease issued to him as ap-

plied for, and to have issued the mandate of this court requiring the state land commissioner to perform that duty. It is ordered that the writ issue as prayed for.

MAIN, C. J., HOLCOMB, CHADWICK, and MACKINTOSH, JJ., concur.