[No. 22565. Department Two. June 17, 1930.]

THE STATE OF WASHINGTON, *on the Relation of Henry E. Juenemann et al., Plaintiffs,* v. THE SUPERIOR COURT FOR THURSTON COUNTY, *Respondent.*[1]

*Thos. R. Waters* and *H. S. Nightingale,* for plaintiffs.

*The Attorney General, V. D. Bradeson,* and *Glen R. Madison,* for respondent.

FRENCH, J.—Relators in this proceeding seek to review the action of the superior court of Thurston county in entering a judgment of dismissal after a trial upon the merits.

The legislature of 1929 included in the highway appropriation the following item, the same appearing in ch. 231 of the Laws of 1929, p. 668, and reading as follows:

[1]Reported in 289 Pac. 28.

430

"CHAPTER 231
"(H. B. 417)
"APPROPRIATIONS FOR CONSTRUCTION AND MAINTENANCE OF HIGHWAYS, STREETS AND BRIDGES.

"AN ACT relating to public highways, making appropriations for the location, rights of way, engineering, maintenance, improvement, construction and paving thereof, and the construction or purchase of bridges, prescribing the powers and duties of certain officers in relation thereto, and declaring that this act shall take effect immediately.

*Be it enacted by the Legislature of the State of Washington:*

Section 1. For the location, right of way, engineering, maintenance, improvement, construction, and/or paving of the respective state highways hereinafter specified, and the construction or purchase or condemnation of bridges, and maintenance and/or improvement of streets in cities and towns, there is hereby appropriated out of the motor vehicle fund and the highway safety fund in the state treasury, for the biennium ending March 31st, 1931, the respective amounts hereinafter specified for the respective highways and purposes specified: *Provided,* that after the awarding of the contract for or completion of the project specified any allotment shall exceed the requirement, then, and in that event, the balance remaining of any such allotment shall be expended for the maintenance, engineering, construction, improvement and/or paving on the same highway, to be expended under the direction of the director of highways, except the amounts appropriated for cities and towns.

State Road No. 1— . . .

"Blanchard north—Cooperation city of Bellingham—paving .................... $78,000.00 . . ."

Thereafter, by agreement with the proper officials of the city of Bellingham and also with the aid and assistance of Whatcom county, it was agreed that the county would contribute fifteen thousand dollars; that the city would create a local improvement district for the purpose of raising certain amounts, and the state

from this appropriation paying the balance, that certain streets in the northerly part of the city of Bellingham should be improved, widened, and re-paved, these streets being a part of state road No. 1, commonly known as the Pacific highway. The record also discloses that the state highway engineer and the proper officers and officials of the city of Bellingham have agreed, and it is their intention, to use $24,000 of the $78,000 appropriated by the state to help pay for the construction of a bridge over and across a ravine to replace the existing structure which is now used on Northwest avenue, one of the streets included in this improvement, and a part of the said Pacific highway.

The record fully discloses that, if all of the money appropriated is actually expended on the paving portion of this contemplated improvement, there will be no necessity of raising any considerable amount from the property owners included within the local improvement district created by the city; whereas, under the plan which has been adopted by the state officers and the city officials, there will be assessed against property included in the created district $24,000 more than would otherwise be assessed against them. We think it fairly appears from the record that the old bridge or viaduct which it is intended to replace in this general improvement is in a weakened and unsafe condition and that it is necessary to replace the bridge so that traffic may be properly handled on the Pacific highway. The relators in this court, plaintiffs below, are all owners of tracts and parcels of land included in the proposed local improvement district, and they claim the right to maintain this action for and on their own behalf and for the benefit of all other property owners within such district.

The relief sought is to enjoin the state officers and officials from using any part of the $78,000 appro-

priated by the state for any purpose other than paving the particular streets included within the improvement district, and particularly to restrain them from using any portion of such fund in the construction of the bridge on Northwest avenue above referred to.

The first question raised is the legal authority of relators to maintain this action.

In the early case of *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067, we said:

"This court, untrammeled by precedent or authority in laying down a policy for this state, deems it safer to relegate the instituting of suits, involving the disposition of revenue of the state, where no private interests are involved, to the judgment and discretion of the attorney general."

This rule of law was re-affirmed in *Birmingham v. Cheetham,* 19 Wash. 657, 54 Pac. 37; *Tacoma v. Bridges,* 25 Wash. 221, 65 Pac. 186; *Bilger v. State,* 63 Wash. 457, 116 Pac. 19; and *State ex rel. Pierce County v. Superior Court,* 86 Wash. 685, 151 Pac. 108.

The relators in this case, however, claim that they have a special interest or right in this fund which takes them without the rule announced in the cases just cited. This requires an examination of the act in question. Chapter 231 of the Session Laws of 1929, p. 668, is the general appropriation act of the legislature providing for the expenditure of more than twenty-three million dollars of highway funds during the biennium ending March 31, 1931. The particular item in question is but one of more than two hundred included in such bill. It provides only "Blanchard north—cooperation city of Bellingham, paving, $78,-000." The particular place where this money shall be expended covers a wide range of territory. Blanchard north on state road No. 1 would permit the state highway engineer, in strict conformity with the law, to expend this fund any place over a stretch of more

than twenty miles. The limiting words "cooperation city of Bellingham," would seem to indicate that it was the intention of the legislature that the amount specified be expended within the limits of the city of Bellingham, leaving it, however, to the discretion of the state highway engineer as to exactly where and on what particular streets this money should be expended, so long as it was expended within the city limits of the city of Bellingham, and on streets properly designated as constituting a part of the Pacific highway, or state road No. 1.

There is nothing in the act which requires any part of this money to be expended within the limits of the improvement district which has been created by the city of Bellingham, and until such time as the particular streets which are now being improved had been designated by the highway engineer as streets which could and should be properly paved from money included within this appropriation, and until these relators had been included within the assessment district by the city of Bellingham, they were in no way interested in the expenditure of this money other than as citizens generally. This appropriation can not be said to have been made for their benefit. It might well have been that the highway engineer and the state officers would have designated for improvement an entirely different set of streets; streets where by no possible stretch of the imagination could appellants' property have been included within an improvement district, or this money might have been expended without the creation of an improvement district. Relators could then have had no just complaint.

Had the city, in conjunction with the highway engineer designated this particular improvement as the proper place for the expenditure of the money granted by the state appropriation above referred to,

434

and had the improvement been made without the creation of an improvement district, certainly relators could have had no complaint. It is the creation of the assessment district and the inclusion of their property of which relators are really complaining. Until that was done, they had no other or different interest in the $78,000 appropriated than had any other taxpayer.

We hold that, under the rule announced in the cases above cited, relators have no legal capacity to maintain this action. What we have said, however, is without prejudice to the right of relators in appropriate proceedings to question the validity of any special assessment made by the city against their property.

Writ denied.

MITCHELL, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., concur.