[No. 23497. *En Banc.* June 16, 1932.]

*In re* DUPONT STREET, *Etc.*[1]

*Thomas R. Waters* and *H. S. Nightingale,* for appellants.

*Glenn R. Madison,* for respondent.

HOLCOMB, J.—Prior to the 1929 session of the legislature, certain property owners and city officials of Bellingham sought the assistance of the state in improving Dupont and Elm streets and Northwest avenue in Bellingham, the purpose being to make those three streets a part of the Pacific highway. The city · obtained from the state highway department two thousand dollars, which were expended for temporary repairs on Dupont street. The result was not satisfactory.

[1]Reported in 12 P. (2d) 589.

The cost estimated by the city and state highway officials for paving the three streets to a width of thirty-five feet was one hundred and ten thousand dollars. The estimated cost of constructing a bridge across Squalicum creek on Northwest avenue was fifty thousand dollars, making the total estimated cost of the improvement one hundred sixty thousand dollars. The highway department agreed to recommend to the legislature an appropriation for payment by the state of one-half the cost of the improvement; that is, fifty-five thousand dollars for the paving and twenty-five thousand dollars for the bridge.

The legislature appropriated seventy-eight thousand dollars, the two thousand dollars obtained by the city from the highway department and expended for repairs on Dupont street being deducted, leaving that much less than one-half of the estimated cost of the improvement. The act in which this item was included appropriated more than twenty-three million dollars on more than two hundred items of improvements for construction and maintenance of highways, streets and bridges. The act (chap. 231, Laws of 1929, p. 668), so far as material, reads as follows:

"Section 1. For the location, right of way, engineering, maintenance, improvement, construction and/or paving of the respective state highways hereinafter specified, and the construction or purchase or condemnation of bridges, and maintenance and/or improvement of streets in cities and towns, there is hereby appropriated out of the motor vehicle fund and the highway safety fund in the state treasury, for the biennium ending March 31st, 1931, the respective amounts hereinafter specified for the respective highways and purposes specified: *Provided*, That, after the awarding of the contract for or completion of the project specified any allotment shall exceed the requirement, then, and in that event, the balance remaining of any such allotment shall be expended for the

maintenance, engineering, construction, improvement and/or paving on the same highway, to be expended under the direction of the director of highways, except the amounts appropriated for cities and towns:
 "State Road No. 1—

. . . . . . . . . . . .

 "Blanchard North—cooperation city of Bellingham —paving $78,000.00."

The proper officials of the city and the director of highways cooperated in determining what streets forming part of the highway should be improved, the character of the bridge, the manner of letting contracts, and the like, its width, as a permanent state highway, being fixed by law (Rem. Comp. Stat., § 6742). The city and the state officials agreed that of the seventy-eight thousand dollars appropriated by the state, fifty-four thousand dollars would be applied toward the cost of paving Dupont and Elm streets and Northwest avenue, and that twenty-four thousand dollars would be applied toward the cost of the construction of the bridge across Squalicum creek.

On May 27, 1929, the city council of Bellingham enacted an ordinance providing for the construction of a concrete bridge on Northwest avenue across Squalicum creek. The ordinance provided that, of the cost of such construction, a certain railway company would pay ten thousand dollars and the remainder of the cost would be paid out of funds provided by the state from some other source.

On December 16, 1929, the city council passed its resolution of intention to pave Dupont and Elm streets and Northwest avenue to city limits, "except bridging Squalicum creek, which will be done under separate contract." The resolution provided:

"That the cost and expense of said improvement . . . shall be payable as follows: $54,000 shall be paid by the state of Washington, from funds provided

for same, $15,000 by Whatcom county, and the balance by mode of 'PAYMENT OF BONDS,' shall be borne by and assessed to the property included in the assessment district hereafter created, in accordance with the special benefits conferred on such property. . . ."

A notice of hearing on the resolution was timely mailed to each of the record owners of real estate within the proposed improvement district, and was duly published, advising each property owner of the approximate assessment that would be imposed against his or her land as prescribed by chap. 98, Laws of 1911, p. 441 (Rem. Comp. Stat., § 9361), as amended by chap. 97, Laws of 1929, p. 188. At the time and place appointed for the hearing on the resolution of intention, a number of property owners within the proposed improvement district appeared and filed a written protest against the improvement. The hearing on the protest was continued one week, at which time the protestants appeared and withdrew their protest. On January 20, 1930, pursuant to the resolution of intention, the city council passed an ordinance creating local improvement district No. 937, for the paving of the three streets mentioned above.

In March, 1930, prior to the expenditure of any funds for the improvement of the three streets, Henry E. Juenemann and other property owners within the improvement district, by an action in Thurston county, sued to enjoin the diversion of any part of the appropriation of seventy-eight thousand dollars from its application toward the paving project. Relators then sought a review of the judgment of the superior court for Thurston county dismissing the action for injunctive relief. On the ground that the relators had no capacity to sue, we denied the applica-

tion for the writ of review (*State ex rel. Juenemann v. Superior Court,* 157 Wash. 429, 289 Pac. 28),

"... without prejudice to the right of relators in appropriate proceedings to question the validity of any special assessment made by the city against their property,"

and held that, until the relators had been included within the assessment district by the city, they were in no way interested in the expenditure of the money other than as citizens generally.

Thereafter, the paving improvement was completed, an assessment roll in the pavement improvement district was prepared, and prior to the hearing thereon a number of property owners within the improvement district filed written objections to the assessment roll, upon the ground that, of the appropriation of seventy-eight thousand dollars for paving, only fifty-four thousand dollars were so applied; that the city and the state highway director had no legal right to agree that twenty-four thousand dollars of the appropriation should be applied to the construction of the Squalicum creek bridge; and

"That if all of the $78,000 appropriated by the Legislature had been applied toward the payment of the paving, no assessment against their properties would have been necessary; that the city council and the city were without jurisdiction to levy any assessments in the local improvement district for the paving until the whole of said appropriation, or so much thereof as might be necessary, had been applied toward the payment of the cost of the same."

The hearing on the assessment roll resulted in overruling the objections of the protestants, and the approval and confirmation of the assessment roll by the city council. The cause was appealed to the superior court for Whatcom county, which resulted in a decree confirming the assessment roll as confirmed by the

444

city council. The trial court was of the view that the action of the city and state officials, in agreeing upon the method and manner of making the improvement and in providing that, of the appropriation for paving, a portion should be used in the construction of the bridge, "was an administrative act and legal;" and that the word "paving" in the appropriation act included the construction of the Squalicum creek bridge. The protesting property owners have appealed.

Counsel for the city contends that appellants had no vested right in the appropriation; that, if there was any uncertainty as to the meaning of the statute, the construction placed upon the statute by the officials charged with its administration is decisive; and that appellants, by withdrawal of their protest against the improvement at the hearing on the resolution of intention to improve the three streets and apply to the payment of the cost of the improvement only a portion of the money appropriated by the state for paving those streets, are estopped to question the assessment roll.

On January 13, 1930, at the hearing on the resolution of intention to improve the streets in question, appellants and other property owners withdrew their protest against the improvement. On January 20, 1930, pursuant to the resolution of intention, the city passed an ordinance creating the local improvement district for the paving of the three streets. Appellants never have contended, and do not now contend, that there was any defect or irregularity in any resolution, ordinance or proceeding of the state or city authorities, nor that the assessment against any parcel of their property was in excess of the special benefits created on the property by the improvement.

The *Juenemann* case, *supra,* is not a bar to the right

of appellants to question the validity of the special assessments made by the city against their property, by appeal to the superior court, as provided by Rem. Comp. Stat., § 9374; *Lee v. Olympia,* 122 Wash. 616, 211 Pac. 883. But appellants acquired no such interest in the appropriation of seventy-eight thousand dollars for paving as entitled them to compel the use of any of it at any particular place, or to question the right of the city and state officials to "cooperate," as authorized by the act, in good faith, and use any part of the appropriation toward the paving project, and to that extent, as long as the benefits exceeded the assessments, impose that burden upon appellants.

Chap. 97, Laws of 1929, p. 188, amending chap. 98, Laws of 1911, p. 441 (Rem. Comp. Stat., § 9361), to provide for written notice to each property owner in addition to publication of the resolution of intention to establish an improvement district, is not important, since appellants do not contend that its requirements were not obeyed by the city, and are not objecting to the establishment of the improvement district. They may not now object to the formation of the district, since their protest against its establishment was withdrawn, thus making no protest. *Giles v. Olympia,* 115 Wash. 428, 197 Pac. 631, 16 A. L. R. 493.

Appellants argue with much force that the repeated separate use of the words "paving" and "bridges," in other parts of the act, proves the intention of the legislature to limit the specific appropriation in question to "paving" and not to extend it to a "bridge;" but this construction narrows and limits it too greatly.

Doubtless the legislature was fully informed, when it made the appropriation in question, of the agreements between the state highway department and Bellingham looking to the paving of a street wider than was needed by the city, which would, of course, require

the construction of the bridge in question and paving it the same width. This was all done by agreement between the state and the city. When the appropriation therefor was made reading: "State Road No. 1, . . . Blanchard North, Cooperation City of Bellingham—Paving $78,000," the division of the seventy-eight thousand dollars between the state and the city was left entirely to the discretion and judgment of the administrative officers. Thereafter, by agreement, the appropriation was so divided that fifty-four thousand dollars was applied toward the payment of the cost of paving the streets of the city necessary to be paved and the balance thereof, twenty-four thousand dollars, applied toward the payment of the cost of construction of the bridge across Squalicum ravine.

Manifestly, unless the abutting property owners had a vested right to prevent the use of the appropriation in such manner, which they did not, according to our decision in the *Juenemann* case, *supra,* the exercise of discretion of the officers of the state and of the city, should 'not be disturbed except for the most cogent reasons. *McSorley v. Hill,* 2 Wash. 638, 27 Pac. 552.

The question involved is not, as appellants assert, whether or not the director of highways may, at his pleasure, divert twenty-four thousand dollars of the appropriation to the construction of a bridge, but whether or not the city and state officials had authority to cooperate in good faith, in determining the nature of the improvement and the apportionment of the appropriation of the funds therefor, as was done.

*In re Shilshole Avenue,* 94 Wash. 583, 162 Pac. 1010, cited by appellants as similar in principle to the conditions in this case, is not apt. There, special assessments were attempted to be levied a second time for alleged special benefits which had been fully adjusted

in a former condemnation proceeding. Nor is there any feature in common between the instant case and the *Giles* and *Lee* cases, *supra,* except that all arise under the statutes providing for special assessments to pay the costs of special improvements and prescribing the procedure.

We conclude that the judgment must be, and is, affirmed.

MITCHELL, PARKER, MAIN, and HERMAN, JJ., concur.

MILLARD, J. (dissenting)—I am of the opinion that the judgment should be reversed, and the appellants granted the relief for which they pray.

In March, 1930, which was prior to the expenditure of any funds for the improvement of the three streets in question, Henry E. Juenemann and other property owners were unsuccessful in their effort to enjoin diversion of any part of the appropriation from its application toward the paving project.

*State ex rel. Juenemann v. Superior Court,* 157 Wash. 429, 289 Pac. 28, is not a bar to the right of appellants to question the validity of the special assessments made by the city against their property. By the creation of the assessment district and the inclusion of their property therein, appellants acquired such an interest in the appropriation of seventy-eight thousand dollars for paving as entitled them to question the right of the city and state officials to divert any part of that appropriation from its application toward the paving project and, to the extent of the diversion, impose that burden upon the appellants.

Chapter 97, Laws of 1929, p. 188, amending chap. 98, Laws of 1911, p. 441, to provide for written notice to each property owner in addition to publication of the resolution of intention to establish an improvement district, is not pertinent. Appellants are not ob-

jecting to the establishment of the improvement district. They may not now object to the formation of the district. Their protest against the establishing of the district was withdrawn. If the appellants had not filed any protest, the situation would be no different.

"Since they were not remonstrants against the establishment of the local improvement district, and the making of the improvement proposed, it was not incumbent upon them to appear before the city council and make any objections, or assert any of their rights until it was found that their premises were to be specially assessed for the improvement." *Giles v. Olympia,* 115 Wash. 428, 197 Pac. 631, 16 A. L. R. 493.

Appellants are entitled, as we held in *State ex rel. Juenemann v. Superior Court, supra,* to question the validity of the special assessments made by the city against their property when the assessment district was created and their property was included therein. The appellants timely appeared and objected to the confirmation of the assessment roll. They complied with the statutory provision (Chap. 97, Laws of 1929, p. 189, § 21) that, following the filing of the assessment roll, they appear and object to its confirmation.

Where there is no ambiguity, the construction placed upon a statute by the officer charged with its administration is entitled to no weight.

"We are not unmindful of the rule that the construction placed upon a statute by the department or officer charged with its administration is entitled to weight and consideration in the courts, but, as said by the supreme court of the United States in *United States v. Dickson,* 15 Pet. 141, 10 L. Ed. 689:

" 'The construction so given by the treasury department to any law affecting its arrangements and concerns, is certainly entitled to great respect. Still, however, if it is not in conformity to the true intendment and provisions of the law, it cannot be permitted to conclude the judgment of a court of justice. . . .

It is not to be forgotten that ours is a government of laws, and not of men; and that the judicial department has imposed upon it, by the constitution, the solemn duty to interpret the laws in the last resort; and however disagreeable that duty may be in cases where its own judgment shall differ from that of other high functionaries, it is not our liberty to surrender, or to waive it." *State ex rel. Pindall v. Ross,* 55 Wash. 242, 104 Pac. 216.

There is nothing in chap. 231, Laws of 1929, p. 668, indicating an intention on the part of the legislature to vest a discretion in the director of highways in the matter of diverting part of an appropriation for the paving of a road to payment for a bridge, or for any purpose other than that specified in the appropriation act. While a bridge is an essential part of a road or highway, and, as said in 4 R. C. L., p. 195, § 3, "is usually treated as constituting a part of the highway with which it is connected," the legislature clearly considered bridges and paving as distinct from, and independent of, each other. That a bridge was not to be regarded as a part of a street, road or highway, is manifest from a reading of the appropriation act, which enumerates the purposes for which the numerous appropriations are made, they being,

"For the location, right of way, engineering, maintenance, improvement, construction and/or *paving* of the respective state highways hereinafter specified, and the *construction* or purchase or condemnation of *bridges.*"

The act then appropriates "The respective *amounts* hereinafter *specified* for the respective highways and *purposes specified* . . ."

There are more than two hundred items for which the act makes appropriations. The amount to be used for each improvement is specified and the purpose for which each amount specified is to be used is definitely

stated. A few of the items of the act (chap. 231, Laws of 1929, p. 669) are:

Blanchard overhead bridge and approach. . .$205,000
Blanchard North—cooperation city of Bellingham—paving .....................  78,000
Snohomish River bridge approach—paving
    gaps ..................................  5,000
Seattle-B. C. Line—oiling................  6,750
Yakima River bridge at Prosser...........  40,000
Waitsburg Bridge—location engineering...  20,000
Spangle-Colfax—paving—grading and
    bridges ..............................  295,000
Pullman-Colfax-Spokane—oiling ..........  66,200
Spokane-Laurier—oiling ................  140,000

What the legislature really meant is expressed by the language of the act, the meaning of which is plain and free from ambiguity. Had the legislature intended to appropriate any amount for a bridge for the city of Bellingham, it would have said so. In each case where the legislature desired to make an appropriation for a bridge or other work on the highways, the purpose for which the appropriation was made was specified. Where the appropriation was for a bridge, for paving or oiling, the purpose for which the money was to be used was stated as "bridge," "paving," or "oiling," respectively.

Tolman, C. J., and Beals, J., concur with Millard, J.