[No. 2659.　Decided August 4, 1898.]

WILLIAM BIRMINGHAM, *Appellant*, v. NEAL CHEETHAM, *State Auditor, et al., Respondents.*

DEMURRER — ORJECTIONS NOT RAISED — INJUNCTION — RESTRAINING PUBLIC OFFICERS.

A demurrer on the grounds that the complaint does not state a cause of action and that there is no equity in the complaint, would not raise the question of the legal capacity of plaintiff to sue.

Although the ground of objection on which a demurrer to a complaint was sustained in the court below may not have been raised there, the ruling will be affirmed on appeal, if it appears that the complaint does not state a cause of action against defendants, and that the insufficiency of the facts stated was raised by demurrer.

Injunction will not lie to restrain the officers of the state from complying with the provisions of an act of the legislature requiring them to perform certain public duties, in the absence of a showing that the complainant will be pecuniarily and directly injured by the acts complained of.

Appeal from Superior Court, Pierce County.—Hon. THOMAS CARROLL, Judge. · Affirmed.

42—19 WASH.

*Doolittle & Fogg*, for appellant.

*P. H. Winston*, Attorney General, and *Thomas M. Vance*, Ass't Attorney General, for respondents.

The opinion of the court was delivered by

ANDERS, J.—The plaintiff seeks by this action to restrain the chief grain inspector of the state from further employing or retaining in his employ deputy inspectors, or incurring other expenses under the grain inspection act, and from approving or certifying as correct any bills or accounts for the services of said deputy inspectors, or other expenses; to enjoin the state auditor from signing or issuing any warrants upon the grain inspection fund; and to prevent the state treasurer from paying any warrant or warrants drawn upon said fund out of the moneys belonging thereto. In order that the questions involved herein may be properly understood, it becomes necessary to set forth the substance of the complaint. It is alleged substantially in the complaint that the plaintiff is a citizen and taxpayer of Pierce county, state of Washington, and that he brings this action for himself, and in behalf of the other taxpayers of the state, and in behalf of all such other persons as may be engaged in buying, selling, transporting or handling grain, affected by and subject to the grain inspection laws of this state; that the defendant Wright is the duly appointed and qualified chief grain inspector of the state of Washington; that the defendants Cheetham and Young are, respectively, the duly elected, qualified and acting state auditor and treasurer; that, during all the times in the complaint mentioned, plaintiff has been, and now is, engaged in buying, selling and transporting, handling and shipping wheat, oats and other grain at the city of Tacoma, in the county of Pierce, and in other counties in the state; that all of the grain so purchased, shipped, sold and handled by plaintiff has been inspected, and has been and is subject to

inspection under the laws of the state of Washington, and the chief inspector and his deputies have been and now are supervising and exercising exclusive control of the weighing and grading of all grain so purchased, handled, shipped and sold by plaintiff; that plaintiff has been and now is handling and shipping grain by the car load, and every such car load of grain is inspected by said chief inspector or his deputies and graded, and said inspector and his deputies have charged up against the plaintiff all the fees and forfeitures for each of said cars of grain so shipped by plaintiff, which said several sums and amounts plaintiff has duly paid; that plaintiff purchased and has in use, and has had in use for many years proper and suitable scales for weighing grain, and has had and now has said scales in frequent and almost constant use; that the said chief inspector has had full supervision of the inspection of all grain, and the weighing of the same on plaintiff's scales, and said chief inspector and his chief deputies have examined, tested and corrected said scales in weighing grain, and have issued to plaintiff a license, for which plaintiff has paid the amount required and provided by law; that plaintiff maintains, and has maintained for several years last past, a warehouse and commission house where grain is received and weighed in the city of Tacoma, and has obtained, and now has, the license required by law therefor; that for all services per-penses of and concerning the grain so purchased, handled, shipped or sold by plaintiff, and of and concerning said scales and warehouse, and of and concerning all the salaries and expenses of and under said grain inspection act, plaintiff has paid, and now is required and is continuing to pay, the various sums and amounts as provided by the grain inspection laws of the state of Washington; that plaintiff has a personal and pecuniary interest in the subject matter of this action and in the relief herein prayed for; that

the legislature of the state of Washington, in March, 1895, passed an act entitled "An Act to provide for state grain weighing and grading, creating the office of state grain inspector, establishing a grain commission, and making an appropriation of $2,000," which act was approved March 19, 1895 (Laws 1895, p. 253); that § 38 of said act appropriates the sum of $2,000 out of any money in the state treasury not otherwise appropriated, to be credited to the grain inspection fund, and to be used to inaugurate and carry into effect the provisions of said act, and that the said sum has heretofore been fully paid out and expended and used to inaugurate and carry into effect the provisions of said act; that it is provided by § 36 of said act:

"All moneys collected by the chief inspector or his chief deputies as herein provided shall be paid into the state treasury by the chief inspector on or before the fifteenth day of each month, accompanied with a statement showing from what source collected and the amount of such collections. It shall be the duty of the state treasurer to receive all moneys aforesaid, and to credit the same to the grain inspection fund, and said fund is hereby appropriated for the purpose of carrying out the provisions of this act;"

that, under and in pursuance of the provisions contained in § 36, large sums and amounts of money have been and are now being collected by the chief inspector and his deputies from plaintiff in this action and other persons, firms and corporations in the state of Washington handling and dealing in grain, and the same has been paid into the said inspection fund in the treasury of the state; that the defendant Neal Cheetham has been and now is issuing warrants from time to time upon said grain inspection fund for the payment of the amount of bills as approved by the said chief inspector, for and including the salary of deputy inspectors and other employees and for other current expenses of said grain commission and inspector; and the said C. W.

Young, as treasurer, has been and now is paying said warrants so drawn upon said fund out of the moneys therein as contributed thereto and paid therein by plaintiff and other individuals, firms and corporations dealing in and handling grain in the state of Washington; that it is provided by § 4 of art. 8 of the constitution of the state of Washington that:

" No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years from the first day of May next after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum;"

that said § 36 of said grain inspection act is unconstitutional and inoperative because it does not distinctly specify the sum to be appropriated; and the said defendant Cheetham has no authority, under said act or otherwise, for drawing warrants upon said grain inspection fund, and the defendant Young has no power or authority to pay money out of said fund upon said warrants; that there is no money in said grain inspection fund, other than the moneys derived by collections from plaintiff and other individuals, firms and corporations handling and shipping grain, other than said sum of $2,000 provided for in § 38 of said act, which sum has all been long since fully paid out and disbursed by the treasurer of the state of Washington (except that the legislature of this state at its March, 1897, session appropriated the sum of $3,600 for salary of grain inspector and $2,000 for clerk hire), and no appropriation whatever was made for deputies or other salaries or expenses; that the period of limitation referred to and fixed by said § 4 of

art. 8 of the constitution terminated and expired on the first day of May, 1897, and all power, right and authority to draw warrants upon and pay money out of said grain inspection fund by defendants, if any authority they ever had, ceased and expired on the first day of May, 1897; that the said defendants Cheetham and Young, in violation of their duty and of the rights of the plaintiff and other taxpayers and persons handling and dealing in grain subject to inspection, propose and threaten to respectively continue to draw warrants upon said grain inspection fund for the salary of deputy inspectors and for other salaries and expenses, and pay the same out of moneys collected from plaintiff and other individuals, firms and corporations dealing in grain, all to the great and irreparable harm and injury of this plaintiff and other individuals, firms and corporations dealing in grain subject to inspection in the state of Washington; that the defendant Cheetham, unless restrained and enjoined in this court, will pretend and claim that, under and by virtue of the provisions of the said act of the legislature of March 19, 1895, he has the right to issue warrants upon said grain inspection fund to pay deputy inspectors, clerks, employees and other expenses, and the defendant Young will claim that he has the right to pay said warrants out of the moneys in his hands as such treasurer, belonging to said fund, and said defendants are claiming and will claim that said act is now a valid and subsisting law in the state of Washington, under which they have the right to so issue and pay warrants as aforesaid; that plaintiff, as well as all other taxpayers of the state, and as well as all other individuals, partnerships and corporations engaged in handling grain subject to the inspection laws of the state, is without remedy save in a court of equity; that no remedy whatever can be had in a court of law; that, even if there was a remedy in law, the same would involve

a multiplicity of suits, and would be so uncertain and protracted as to be of no avail; that under the provisions of the said act no money was appropriated by law other than the $2,000 mentioned in § 38 of said act, and that after the expenditure of said sum there was no warrant or authority in law for the auditor of said state to draw a warrant on such grain inspection fund, nor was there warrant or authority in law for the treasurer of said state to pay any one so drawn; and all moneys that have been paid out of said fund after the paying out of said $2,000 have been so paid out unlawfully and without authority of law, because there was no appropriation distinctly specifying the sum appropriated; that said chief inspector has appointed, and now has in his employ and under his control, a number of deputy inspectors, who are attempting to perform the duties of their office; and said chief inspector is incurring other and additional expenses in carrying out the provisions of said grain inspection act, and has and is about to and will prepare bills for all said services of said deputy inspectors and other expenses as above stated, and said chief inspector has and is about to, and will from time to time, approve all said bills and certify that the same are correct, and present the same to the said state auditor, who has drawn, and will from time to time, as said bills are so presented, draw warrants for the various amounts so certified on the grain inspection fund, and the said state treasurer has paid and will pay the same, upon presentation, out of said fund; that the said defendant Wright, as such chief inspector, intends and threatens to continue to employ deputy inspectors and incur other expenses in connection with said grain inspection and approve, and certify as correct, bills, accounts and claims for the services of said deputy inspectors and other expenses as aforesaid, and present the same to the state auditor for issuance of warrants thereon on said

grain inspection fund; that the said defendants Cheetham and Young have proposed, and now intend and threaten to issue, and are about to issue and cause to be issued, warrants upon said grain inspection fund, and they threaten and intend to pay or cause said unlawful warrants to be paid out of said grain inspection fund, and to draw and pay warrants upon said fund for salary of deputy inspectors and other expenses connected with and growing out of said inspection act; all in violation of the said constitutional provisions, and to the great injury of this plaintiff and other taxpayers, and to the great injury of all persons, partnerships and corporations dealing in and handling grain and paying money into said fund under the provisions of said act, for the reason that said money will thus be wrongfully dissipated and paid out by said defendants, and, as a necessary consequence, no money will remain in said fund with which to pay and discharge lawful warrants that may hereafter be lawfully drawn upon and issued against said fund, and such unlawful payment and dissipation of said fund will necessitate and require further and additional fees, charges and costs to be levied and assessed against plaintiff and other individuals, partnerships and corporations in the state of Washington handling and dealing in grain, and it will cause and necessitate further and additional taxes, levies and assessments to be made, borne and paid by plaintiff and all other taxpayers of said state, and by persons, firms and corporations handling and dealing in grain subject to the grain inspection law, to the irreparable injury and detriment of all these, and to the objects and purposes of said grain inspection act.

To this complaint the defendants interposed a demurrer on the grounds, (1) that the complaint does not state a cause of action against them, or either of them; and (2) that there is no equity in said complaint, as against said defendants, or either of them. This demurrer was sustained, the

court assigning as a reason therefor that the plaintiff has no sufficient interest and no legal capacity to maintain this action. The plaintiff declined to plead further, and thereupon the court rendered judgment against him dismissing the complaint and for costs, to reverse which this appeal is prosecuted.

Section 189 of the code of procedure provides that the defendant may demur to the complaint when it appears upon the face thereof "(2) that the plaintiff has no legal capacity to sue," or "(6) that the complaint does not state facts sufficient to constitute a cause of action." Each of the grounds of demurrer specified by this section is separate and distinct from all others, and has no relation whatever to any other; and we therefore entirely agree with the contention of counsel for the appellant that the question of want of legal capacity to sue was not raised by this demurrer in the court below, and therefore cannot be considered in this court. But it does not necessarily follow from this that the judgment must be reversed. On the contrary, if it appears that the complaint does not state a cause of action against the several defendants, the judgment must be affirmed, regardless of the reason upon which it was based by the trial court. Every complaint, in order to state a cause of action, must show some primary right possessed by the plaintiff and some corresponding duty resting upon the defendant, and that such right has been invaded and such duty violated by some wrongful act or omission on the part of the defendant. Pomeroy, Code Remedies (3d ed.), § 519. Tested by this fundamental rule, it seems perfectly clear to us that no case for an injunction is made against the chief grain inspector. Each and every act which we are called upon to restrain is authorized and required by the statute creating the office of chief grain inspector. Section 2 of the statute provides that he shall appoint such

a number of deputy inspectors as may be necessary to properly and thoroughly inspect the grain as received, and carry out the provisions of the act. The statute also requires him to approve the bills for salaries of his deputies and for other expenses, and to certify the same as correct. These things he has done in compliance with the terms of the statute, and in so doing he has not only discharged his own duties, but has violated no duty owing to plaintiff. If he had refused to inspect plaintiff's grain, or to test and correct his scales, or to issue the proper licenses provided for by the act, the plaintiff would then have had just grounds of complaint. It is impossible for us to comprehend how or in what respect the appellant will be injured by any act of the chief inspector here complained of, and, in the absence of some direct injury to appellant, the official conduct of the inspector cannot be properly interfered with by injunction. And, as to the two other respondents, the case seems to us little, if any, less clear. The statute expressly provides that the state auditor shall draw warrants upon the grain inspection fund for salaries of the deputy inspectors, and for other expenses properly approved and certified by the inspector, and that the treasurer shall pay warrants so drawn out of the grain inspection fund.

But it is claimed that the plaintiff and appellant's rights are hereby infringed; that the moneys of the state have been and will be dissipated and frittered away, to his irreparable injury and damage; and that if such warrants are drawn and paid out of the inspection fund, there will be nothing left therein with which to pay lawful warrants. Under the statute, such warrants as those complained of by the appellant are the only *lawful* warrants that can be drawn against, and paid out of, that fund, for the inspection fund is set aside for the express purpose of paying the salaries of deputies and other expenses mentioned in

the complaint, and for no other purpose whatever; and, in our judgment, the plaintiff's contention that he has a special and pecuniary interest in this fund, because he has contributed to it, cannot be sustained. When the fees for inspection and for licenses provided for by the act of March 19, 1895, are paid into the state treasury, they immediately become the property of the state, or, in other words, public funds; and the plaintiff has no more interest in such fund than an ordinary tax payer has in the general fund of the state. But appellant insists and alleges in his complaint that, if these officials continue to draw and pay these warrants, it will necessarily result in additional fees and in the imposition of greater taxes, and thus increase his pecuniary burdens. But how that result can obtain it is difficult to perceive. The fees and licenses required to be paid by grain dealers are fixed and limited by the statute, and it is further provided that the expenses of inspecting and grading grain shall never exceed the receipts from fees, licenses and forfeitures. The question of taxation cannot properly be considered in the disposition of this case, for, under the statute, no taxes can be levied for the payment of the expenses of inspecting grain; and, besides, no one is proposing or threatening to assess or levy taxes for such purpose, or even to increase the present statutory fees. Nor does the fact that one of the sections of the act under which these officials are proceeding is alleged to be unconstitutional give the plaintiff any right to interfere with the disposition of the grain inspection fund by the officials to whom such disposition has been confided by the legislature. It was well said by the supreme court of Mississippi, in discussing the question here under consideration, that

"Neither an executive nor a ministerial officer can be enjoined generally from putting a law in force. . . . The complainant who seeks an injunction must be able to

specify some particular act, the performance of which will damnify him, and it is such an act alone that he can restrain. This court has no power to examine an act of the legislature generally and declare it unconstitutional. The limit of our authority in this respect is to disregard, as in violation of the constitution, any act or part of an act which stands in the way of the legal rights of a suitor before us; but a suitor who calls upon a court of chancery to arrest the performance of a duty imposed by the legislature upon a public officer, must show conclusively, not only that the act about to be performed is unconstitutional, but also that it will inflict a direct injury upon him." *Gibbs v. Green*, 54 Miss. 592.

See, also, *Thompson v. Commissioners of the Canal Fund*, 2 Abb. Pr. 248; 2 High, Injunctions (3d ed.), § 1326.

In effect, the appellant simply asks this court to interfere by injunction to restrain the officers of the state from complying with the provisions of an act of the legislature of the state requiring them to perform certain public duties; and this the courts cannot do, in the absence of a showing that the complainant will be pecuniarily and directly injured by the acts complained of. Notwithstanding the able argument of counsel for appellant, we are constrained to hold that the judgment of the court below was right, and it will therefore be affirmed.

DUNBAR, GORDON and REAVIS, JJ., concur.