[No. 12930. Department Two. August 16, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Pierce County et al., Plaintiff*, v. THE SUPERIOR COURT FOR THURSTON COUNTY, *Respondent*.[1]

STATES—ACTIONS—LIABILITY TO BE SUED—"SUIT AGAINST STATE"—CONDITIONS—VENUE. An action brought against the state auditor and state highway commissioners to restrain these officers from certifying that certain sums are payable out of the state treasury and from drawing state warrants therefor, on the allegation that the contract under which state highway work is being done was void for fraud in its inception, is in effect an action against the state; and can be brought only by consent of and in the manner directed by the state; and under Rem..& Bal. Code, § 886, must be brought in Thurston county.

STATES—RIGHT OF ACTION—TAXPAYER'S SUIT. A taxpayer, suing as such, with no private interests involved, cannot maintain an action against the state to prevent the misappropriation of public moneys, since the power rests alone with the attorney general.

SAME—TAXPAYER'S SUIT—JURISDICTION—CAPACITY TO SUE—RIGHT TO OBJECT—WAIVER. The objection that a taxpayer, as such, cannot maintain an action against the state to prevent the misappropriation of public moneys, which can only be brought by the attorney general, raises more than the question of mere legal capacity to sue, but asserts want of power to maintain the action; and hence can be raised by any party to the action or by the court and is not waived by failure of the attorney general to object.

SAME—TAXPAYER'S SUIT—RIGHT TO SUE. The rule denying to taxpayers the power to sue state officers for the misappropriation of state funds is not affected by the fact that plaintiff has a right of action against other parties who are joined with the state, nor by the fact that a county has a greater interest in the fund than the state, as part of its appropriation of state funds to be used on roads in the county; nor by the fact that a taxpayer's action affords more prompt and efficient remedies.

PROHIBITION—TO COURTS—INADEQUACY OF REMEDY BY APPEAL. Prohibition lies to prevent further proceedings in an action, brought by a taxpayer, as such, to enjoin state officials from misappropriating state funds, in payment for state highway work, although an appeal lies from the final judgment entered, where, on account of special and peculiar circumstances, the remedy in the ordinary course of law is inadequate.

[1]Reported in 151 Pac. 108.

Application filed in the supreme court July 14, 1915, for a writ of prohibition to the superior court for Thurston county, Mitchell, J., to prohibit further proceedings in a cause. Granted.

*Fred G. Remann, Harry E. Phelps,* and *Hayden, Langhorne & Metzger (William H. Pratt,* of counsel), for relators.

*J. T. S. Lyle* and *John A. Shackleford,* for respondent.

*The Attorney General* and *Edward W. Allen, Assistant, amici curiae.*

FULLERTON, J.—On March 26, 1915, pursuant to the statutes relating to the construction of permanent highways, the board of county commissioners of Pierce county passed a resolution for the improvement of a highway in that county to be thereafter known as "Permanent Highway No. 6 Pierce County." After certain preliminary proceedings, not necessary here to recite, the board issued a call for bids for the construction of the improvement; the work to consist of clearing, grubbing and grading the land along the route selected for the highway, and the laying thereon of some one of twelve different forms of pavement described in the call. Bids were received at the time appointed, and, after consideration, the board accepted as the lowest and best bid for the work the bid of the Washington Paving Company. Prior, however, to the actual letting of the contract, an action was begun by a taxpayer of Pierce county against the county, its commissioners, and the paving company, seeking to enjoin the letting of the contract. A temporary injunction was sought to restrain the parties from acting during the action, which the trial court refused to grant; the order of refusal being dated May 24, 1915. Immediately thereafter, the contract was entered into, and the work of construction begun. Later the action was dismissed without prejudice.

On June 19, 1915, one W. P. Reynolds, a resident and taxpayer of the county of Pierce, began an action in the superior

court of Thurston county, making parties defendant thereto Pierce county, its commissioners, the Washington Paving Company, C. W. Clausen, as state auditor, and W. R. Roy, as state highway commissioner, praying that the contract entered into between the county and the paving company be adjudged null and void; that further work on the highway pursuant thereto be permanently enjoined; and that the county commissioners of Pierce county and the state highway commissioner be enjoined from certifying for payment to the state auditor any sum of money as earned under the contract, and that the state auditor be enjoined from issuing warrants on the state treasurer for the payment of any of such sums, if so certified for payment. The action was founded on the allegation that the contract between the board of county commissioners and the paving company was the result of fraud and collusion practiced by and between certain of the members of the board and the paving company, whereby other persons and firms desiring to bid on the work were denied the privilege of bidding on equal terms with the Washington Paving Company, thereby preventing competitive bidding for the work except in form only. On filing the complaint, a temporary injunction pending the final disposition of the action was applied for by the plaintiff, notice of which was given the defendants. Prior to the hearing on the application, the defendants, Pierce county, its county commissioners, and the Washington Paving Company appeared specially and moved for a dismissal of the action on the ground that the court was without jurisdiction either of the subject-matter of the action or the persons of the defendants. The motions were overruled, whereupon they demurred on the same ground, and upon the additional ground that the plaintiff was without power to maintain the action. The demurrer was likewise overruled, and thereafter a hearing was had on the application for a temporary injunction, which resulted in an order of the court granting the same.

This is an application for a writ of prohibition, brought on the relation of Pierce county, its board of county commissioners, and the Washington Paving Company, defendants in the action last mentioned, against the superior court of Thurston county, and John R. Mitchell, as judge thereof, seeking to prohibit the court and judge named from proceeding further in that action. The application is founded on the contention that the court is proceeding without and in excess of its jurisdiction, and is thus subject to restraint in this form of proceeding. The relators have suggested a number of reasons why the lower court was without jurisdiction to entertain the suit of the plaintiff below, but there is one preliminary to all the others that has seemed to us to be controlling, and this alone we shall notice.

It is well settled that an action cannot be maintained against the state without its consent, and that the state, when it does so consent, can fix the place in which it may be sued, limit the causes for which the suit may be brought, and define the class of persons by whom it can be maintained. In other words, the state being sovereign, its power to control and regulate the right of suit against it is plenary; it may grant the right or refuse it as it chooses, and when it grants it may annex such condition thereto as it deems wise, and no person has power to question or gainsay the conditions annexed. This state has, by its constitution (art. 2, § 26), empowered the legislature to direct by law in what manner and in what courts suits may be brought against it, and the legislature has provided that all such suits shall be brought in the superior court of Thurston county. Rem. & Bal. Code, § 886 (P. C. 453 § 9).

The suit in question, while in form a suit against certain of its executive officers in their representative capacities, is in essence and effect a suit against the state. The suit is instituted to restrain these officers, the one from certifying that certain sums payable out of the state treasury has

been earned in the performance of a contract in which the
state has an interest, and the other from drawing warrants
on the state treasury for the payment of such certificates, if
any are so presented to him. The funds involved are the
funds of the state. The officers sought to be enjoined have
no interest in the funds. They are merely the agents of the
state by and through whom the state acts. They are not
charged with acting in excess of the authority conferred upon
them by law, nor is it charged that the law under which they
are acting is for any reason void. The charge is, on the
contrary, that a contract in which the state has an interest,
and which, if valid, makes a charge upon the state's funds, is
void because of fraud in its inception. Clearly we think such
a suit, even though brought against its officer, must in effect
be a suit against the state.

Again, it is a settled principle in this state that a tax-
payer, as such, cannot maintain an action against the state
or any of its officers to prevent the misappropriation of pub-
lic moneys, but that this power rests alone with the *Attorney
General.* This we first held in the early case of *Jones v. Reed,*
3 Wash. 57, 27 Pac. 1067, and have reaffirmed in the cases
of *Birmingham v. Cheetham,* 19 Wash. 657, 54 Pac. 37; *Ta-
coma v. Bridges,* 25 Wash. 221, 65 Pac. 186; and *Bilger v.
State,* 63 Wash. 457, 116 Pac. 19. It is needless to state the
arguments by which the principle is maintained. This is
done fully in the case wherein the rule was first announced,
where it is acknowledged also that the cases on the question
are not uniform. The court was then called upon to choose
between two opposing rules, and feeling itself "untrammeled
by precedent or authority in laying down a policy for this
state, deemed it safer to relegate the instituting of suits in-
volving the disposition of the revenues of the state, where no
private interests are involved, to the judgment and discretion
of the attorney general." The rule we think ought not now
to be departed from.

Seemingly, therefore, since the suit is against the state, and the plaintiff in the suit is suing as a taxpayer, with no private interests of his own involved, the trial court in entertaining the action is proceeding in excess of its jurisdiction. The appellants, however, suggest certain reasons why this principle is not available to the relators, the first of which is that the relators cannot of themselves raise the question, but that it must be raised by some representative of the state, and no such representative has as yet done so. The suggestion is founded on the principle of want of legal capacity in the plaintiff to sue, and it is argued that, since the plaintiff in the pending action has legal capacity as a taxpayer to sue the relators, it is not of concern to them that others whom he may not sue are joined in the action. But we think the question here is something more than mere want of legal capacity to sue, as that phrase is commonly understood. The provisions of the statutes relating to pleadings make want of legal capacity to sue a distinct ground of demurrer, and it is generally held that the objection is waived if not raised by the defendant to whom the objection is available. But legal capacity to sue, as thus used, has reference to personal disabilities, such as infancy, coverture, idiocy, and the like. It recognizes a right of action in the individual, but denies to him the right to maintain it in his own proper person. The objection here goes deeper than this. It asserts a want of power in the plaintiff to maintain the action; it asserts that in no event, and under no circumstances, and in no capacity, does the plaintiff represent the cause of action he seeks to invoke. His legal capacity to sue in the sense of personal disability is not questioned. It is contended that the wrong committed does not so far affect him personally that he may maintain an action to correct it. If the contention be sound, and we hold that it is, a judgment entered therein would be nugatory. Under such circumstances, we think any party to the action, or even the court itself, may make the objec-

tion. And especially we think must this be the rule in a case like the present. Here the suit is against the sovereign state, which can only be sued in a particular place, in a particular manner, and (in cases such as the case in question) by a specially designated person. Clearly no officer of the state has power, by mere failure to object, to permit the state to be sued in any other or different manner, or by any other or different person than it has itself permitted. We think, therefore, that the court in which the action is pending not only has the power to call in question, but owes to itself and to the state the duty of calling in question, the right of the plaintiff to maintain the action.

Again, it is said (if we have correctly gathered the meaning of the respondents) that the appellant as a taxpayer has the right to maintain an action to inquire into the validity of the acts of the county authorities, and that this right carries with it the right to join the state and its officers therein, since they are necessary parties to a complete determination of the issues. But the state's immunity from suit, except in so far as it may have granted it away, exists at all times and under all circumstances. If it cannot be sued alone by a particular plaintiff, it cannot be sued by him by the mere process of joining other parties with it. To so hold would be to extend the privilege of suit beyond that to which the legislature, the paramount power, has extended it.

Arguing against the policy of the rule of the case of *Jones v. Reed*, the respondents call attention to that part of the statute creating the permanent road fund which requires the expenditure on the permanent highways in each county of a sum equal to the amount paid into the fund by that county, and contend therefrom that the county's interest in the fund is greater than it is in the more purely state funds in the state treasury, and for this reason ought to be subject to control at the suit of a taxpayer. But the rule is not directed against the purpose of the suit, but is directed against

the policy of permitting the state or its officers to be sub-
jected to such suits. As was said in the case of *Jones v. Reed:*

"As the fallacy of a proposition can best be shown by dis-
torting it, we may presume that if one of the departments of
the state government can be suspended at the instance of a
private citizen, who has nothing more than a community in-
terest in a matter which concerns the general public, that
every department of the state can be suspended at the same
time, and the whole machinery of the government stopped,
and the very existence of the state, so far as the exercise of
its functions are concerned, destroyed. Surely such a theory
of practice is not in harmony with the genius of our govern-
ment, nor will authority sanction, or public policy permit,
the adoption of a rule which will authorize any number of
volunteers who may, rightfully or wrongfully, interpret the
laws different from the interpretation put upon them by the
officers of the state, to paralyze for a time every or any
branch of the state government. It seems to us that there is
a difference in principle, and there might be a very great dif-
ference in results; and probable results are what the policy
of the law is based upon. To prevent just such results, and
to protect the interests of the public, the statute has pro-
vided for the election by the taxpayers of an officer—the at-
torney general—who is especially clothed with authority to
institute proceedings of this kind."

Nor can it be said that the rule will not afford as prompt
or efficient remedies against misappropriation of state funds
as will the rule permitting a taxpayer to sue. It is not to
be supposed that the attorney general will neglect or refuse
to perform his duties, and a taxpayer, having knowledge of
such misappropriation, has but to submit the matter with
his proofs to that officer to obtain an investigation, and ac-
tion thereon if the facts warrant such a course.

Finally, it is said that the remedy of the relators for the
relief they seek is not by the writ of prohibition, but by an
appeal from the final judgment of the trial court, if adverse
to them. Doubtless an appeal would lie from such a judg-
ment, and that ordinarily such would be the only relief af-

forded. But this case presents special and peculiar circumstances, rendering the remedy in the ordinary course of law inadequate.

Our conclusion is that the alternative writ heretofore issued should be made peremptory. It is so ordered.

MORRIS, C. J., CROW, ELLIS, and MAIN, JJ., concur.