[No. 33375. *En Banc.* November 10, 1955.]

THE STATE OF WASHINGTON, *on the Relation of the Oregon State Highway Commission et al., Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent,* CLARK COUNTY, *Intervener.*[1]

[1]Reported in 289 P. (2d) 1027.

*Richard Thorgrimson,* Special Assistant Attorney General (*Preston, Thorgrimson & Horowitz, Robert Y. Thornton, C. W. Enfield* and *Charles C. Peterson,* of counsel), for relators.

*The Attorney General, B. F. Reno, Jr.,* and *J. Calvin Simpson, Assistants,* for respondent.

*R. DeWitt Jones,* for intervener.

HILL, J.—We are here confronted with an attack upon the validity of a contract dated April 27, 1955, between the state of Oregon, acting by and through the Oregon state highway commission, and the state of Washington, acting by and through the Washington state highway commission and the Washington toll bridge authority, relating to the construction of a new toll bridge across the Columbia river between Portland, Multnomah county, Oregon, and Vancouver, Clark county, Washington, and the reconstruction of the existing bridge and the reimposition of tolls thereon. The legislation by authority of which the state of Washington entered into that contract (Laws of 1953, chapter 132, p. 252,

as amended by Laws of 1955, chapter 152, p. 668, which, by virtue of an emergency clause, became effective when signed by the governor, March 15, 1955) is also attacked, as unconstitutional in so far as it authorizes the impairment of the obligations of an existing contract authorized by the legislature in 1927 (Laws of 1927, chapter 252, p. 396).

An alternative writ of mandate issued out of this court May 31, 1955, directing the state auditor to issue three warrants payable out of funds available in the toll bridge authority revolving fund of the state of Washington or to show cause why he has not done so.

The state auditor's return to the order to show cause admits that duly verified and authenticated vouchers have been presented for payment of expenses incurred and disbursements made pursuant to the contract of April 27, 1955, by the Oregon state highway commission in the amount of $1,646.78, by the Washington state highway commission in the amount of $779.49, and by the Washington toll bridge authority in the amount of $250.

The reasons set forth in the auditor's return for not issuing the warrants are: (1) that the contract pursuant to which the expenses were incurred and disbursements made for which the vouchers were presented, is illegal and void in that the Oregon state highway commission has, without statutory authority, delegated to the Washington toll bridge authority the exclusive right to set, impose, and collect tolls on the bridges the building and reconstruction of which are the subject-matter of the contract referred to; and (2) that, inasmuch as one of the conditions to which the state of Washington agreed at the time it acquired title to a portion of the existing bridge (which is to be reconstructed) from Clark county was that the bridge should be operated without the imposition and collection of tolls for pedestrians, horsedrawn vehicles, and privately owned motor vehicles, it follows that the act of the legislature authorizing the reimposition of tolls on that bridge and authorizing the contract pursuant to which the expenses have been incurred and the disbursements made for which the vouchers with which we are here concerned were issued, impairs the obligation

of the state of Washington under its contract with Clark county and is a violation of Art. I, § 23 of the constitution of the state of Washington: "No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed."

We are met at the outset by respondent's challenge to our jurisdiction, he contending that this is a controversy between states under the provisions of the United States constitution, Art. III, § 2, and that the supreme court of the United States has exclusive jurisdiction. 28 U. S. C. 1952 ed. § 1251.

Passing the question of whether the jurisdiction of the United States supreme court is exclusive, we hold that this is not a controversy between states. If we were to uphold the position taken by the state auditor and hold that a warrant should not issue to the Oregon state highway commission for payment of its expenses incurred and disbursements made under the contract of April 27, 1955, and the state of Oregon then sought a judgment against the state of Washington for that amount, the action would be for money due on the contract and there would be a controversy between the states and consideration would have to be given to the determination of the proper forum. At the present moment, however, the only controversy is whether our state auditor is refusing to perform a duty which he can and should be compelled to perform. *Huidekoper v. Hadley* (1910), 177 Fed. 1; *People ex rel. Swartchild & Co. v. Carter* (1941), 376 Ill. 590, 35 N. E. (2d) 64. Quite clearly, this court has original jurisdiction in "mandamus as to all state officers" (Washington state constitution, Art. IV, § 4) and can issue a writ of mandate to compel the issuance of the warrants to which reference has been made. The fact that the Oregon state highway commission is one of the parties seeking this writ of mandate to compel the auditor to perform what is claimed to be his duty, cannot make this proceeding a controversy between states.

We shall now consider the reasons given by the auditor as to why he has not issued the warrants referred to and

why he should not be compelled to do so, taking them in reverse order.

A short narrative relative to the present bridge is necessary to an understanding of the issue presented. It was built by Multnomah county, Oregon, and Clark county, Washington, as a toll bridge. The state of Oregon acquired that portion of it owned by Multnomah county and the state of Washington acquired that portion owned by Clark county, and since January 1, 1929, the two states have jointly operated the bridge as a toll-free facility.

The state of Washington, through its state highway committee, entered into a contract with Clark county dated December 27, 1928, which provided that Clark county would sell and the state would purchase all that portion of the bridge then owned by Clark county, together with the approaches thereto and all rights of way necessary for the permanent establishment thereof, for two hundred fifty thousand dollars and

". . . in consideration of said bridge being maintained and operated without the imposition and collection of tolls for pedestrians, horse-drawn vehicles and privately owned motor vehicles, as provided in said chapter 252, Session Laws of 1927."

The consideration expressed in the combined deed and bill of sale executed by Clark county December 31, 1928, covering the portion of the bridge owned by Clark county and certain described real property in the state of Washington on which the bridge and its approaches were located, was two hundred fifty thousand dollars and

". . . the operation by the State of the Interstate Bridge at Vancouver as a free bridge under and by virtue of the authority contained in chapter 252, Session Laws of Washington for 1927."

It is on the quoted provision of the contract of December 27, 1928, and the deed of December 31, 1928, that the auditor bases his claim that the legislative authorization for restoration of tolls on the existing, but reconstructed, bridge, which restoration is an integral and necessary part of the

contract of April 27, 1955, between the relators, impairs the obligations of the earlier contract.

Clark county has intervened in this court and asked that we determine its rights in this proceeding. We can scarcely determine the rights of Clark county in a mandamus action, although we must of necessity arrive at a conclusion concerning them in order to determine whether the auditor has justified his failure to issue the warrants.

Our conclusion is that the quoted provisions of the contract and deed relied upon by the respondent and the intervener were never authorized by the legislature and were not in accordance with the terms and provisions of chapter 252 of the Laws of 1927, to which the quoted provisions of both the contract and the deed make reference.

An examination of that chapter discloses that it gave the state highway committee no authority to contract with Clark county for anything except as to the purchase of the bridge. The act (§ 1) authorized the state, through its highway committee, to purchase, and Clark county to sell, that portion of the bridge owned by Clark county; it (§ 2) authorized the state highway committee to pay such price as might be agreed upon between the committee and the board of county commissioners of Clark county; it (§ 4) empowered the state highway committee, in the event of failure to agree upon a purchase price, to start a condemnation proceeding to acquire Clark county's interest in the bridge; and it (§ 6) authorized the county commissioners of Clark county to submit to a vote of the electors of that county a proposition to sell "at such price as they may desire to submit."

Only two sections of that chapter refer to tolls or the absence thereof, and those references are to negotiations by the state highway committee with the state of Oregon. In § 2, it was provided that, as a condition precedent to purchasing Clark county's portion of the bridge, the state highway committee should enter into an agreement with the state of Oregon relative to the maintenance and operation of the bridge toll-free as to "pedestrians, horse drawn

vehicles and privately owned motor vehicles." In § 5, it was provided that:

"From and after the time when the State of Washington shall acquire from Clark county the aforesaid portion of said bridge the same shall be maintained and operated by the state, in conjunction with the proper authorities of the state of Oregon or the county of Multnomah having charge of the maintenance and operation of the other portion of said bridge, without the imposition and collection of tolls from pedestrians, horse drawn vehicles or privately owned motor vehicles, but the state may impose and collect such tolls for the use of such bridge by street and interurban railways, auto transportation companies and motor vehicles operated for hire as the state highway committee of the State of Washington and the proper authorities of the state of Oregon or the county of Multnomah may agree upon and prescribe."

The states of Washington and Oregon could and did enter into such a contract, but both parties to that contract now desire to change it and to restore tolls on the bridge as reconstructed. Clark county was not a party to that contract.

We quote from the 1928 agreement between the state of Washington and Clark county:

"Now, THEREFORE, THIS AGREEMENT by and between the State of Washington, acting through its State Highway Committee, and Clark County, one of the counties in said State, acting by and through its Board of County Commissioners *by virtue of authority conferred by chapter 252, Session Laws of 1927. . . .*" (Italics ours.)

After reciting the consideration of two hundred fifty thousand dollars, the agreement continues,

". . . and in consideration of said bridge being maintained and operated without the imposition and collection of tolls for pedestrians, horse-drawn vehicles and privately owned motor vehicles, *as provided in said chapter 252, Session Laws of 1927.*" (Italics ours.)

Both contracting parties knew that the state highway committee's powers in that transaction were limited by the act referred to. No authority was granted by it to the state highway committee to contract with Clark county

relative to tolls or the absence thereof; the committee's authority was limited to reaching an agreement on the purchase price of the property and the acquisition thereof, or to condemning the property if an agreement could not be reached. It follows that the state highway committee was without authority to include such a provision as that quoted relative to tolls in its agreement with Clark county, or to accept a deed containing such a recital.

█ We conclude that the provision in the contract between the state highway committee and Clark county, and incorporated in the county's deed to the state, relative to maintaining the bridge on a partially toll-free basis, never was and is not binding upon the state of Washington, and that there is no merit in the state auditor's contention that the legislation authorizing the reimposition of tolls on the existing bridge impairs the obligation of the 1928 contract between the state of Washington and Clark county.

We come now to the state auditor's other contention, *i.e.*, that the contract between the state of Oregon, acting by and through its state highway commission, and the state of Washington, acting by and through its state highway commission and its toll bridge authority, is illegal and void in that the Oregon state highway commission has, without statutory authority, delegated to the Washington toll bridge authority "the exclusive right to set, impose and collect tolls on said bridge or bridges."

We have considered the acts of the Oregon legislature (including ORS 366.110, 366.205, 381.005, 381.010, 381.015, 381.070, and particularly the more recent enactment, Oregon Laws of 1953, chapter 389, being ORS 381.086, 381.088, 381.090, 381.092, 381.094) which are the source of the authority of the Oregon state highway commission to enter into the contract of April 27, 1955, with the Washington state highway commission and the Washington toll bridge authority. The question of whether by virtue of these enactments the Oregon state highway commission has authority to contract for the operation of the toll bridges with which we are here concerned by the Washington toll bridge au-

thority, has not been raised. Assuming, as do all the parties to this proceeding, but not deciding that the Oregon state highway commission has authority to make such a contract, we do not find, in the provisions of the contract, any delegation of nondelegable powers.

■ We are satisfied that the collection of tolls is clearly a ministerial function the performance of which the Oregon state highway commission can delegate to the Washington toll bridge authority.

The setting of tolls which will carry out the express purpose of the contract ("that all bonds may be retired and said bridges operated free of tolls at the earliest possible date") clearly involves discretion. It is the intention of the contracting parties that tolls shall be set which will result in paying off the bonds, not as they become due but "at the earliest possible date." This discretion cannot be delegated by the Oregon state highway commission, and it makes no attempt to do so.

■ The provisions of the contract which it is urged are a delegation of nondelegable authority by the Oregon state highway commission have to do with the minimum tolls which can be imposed, and we construe them as empowering the Washington toll bridge authority to determine certain facts, not to fix tolls. The two provisions with which we are here concerned are identical, being paragraph one under "General Provisions" and part of paragraph six under "Things To Be Done by the Washington Toll Bridge Authority." They read as follows:

"The classification and amounts of tolls to be charged and collected from users of said toll facility and the time or times when the same shall be first imposed shall be determined by agreement between the parties hereto; provided, however, that the tolls in no event shall be in an amount less than necessary to pay the principal and interest upon the bonds, costs of maintenance and operation of the new and existing bridges and toll plaza and other costs incidental thereto, and to provide such debt service coverage and reserves that may be necessary for the bonds. In case of disagreement between the parties as to the amount required for such purposes, the determination of the Toll Bridge Author-

ity as to the minimum amounts required for such purposes shall be final."

These provisions state that, if the parties cannot agree as to the amount that must be raised for the specifically enumerated purposes, the toll bridge authority shall determine the amount required therefor. While the tolls charged must be sufficient to raise that amount, the classification and amounts of tolls are still to be determined by agreement of the contracting parties and would, of course, have to be based upon estimates of the number and types of vehicles that would use the bridges. Tolls which will provide funds to retire the bonds "at the earliest possible date" or which will at least raise the amount necessary to meet the minimum requirements of the contract, must be the result of agreement between the contracting parties, including the Oregon state highway commission. We see in the quoted provisions of the contract no delegation of nondelegable discretion but an agreement that the party best equipped to determine operating costs shall compute the amount required to cover the specific items referred to in those provisions, which function is ministerial in scope.

The arguments presented on this hearing have covered a range far beyond the scope of the questions actually presented by the state auditor's return to our alternative writ of mandate. We have considered only the two reasons urged by the auditor in the return as to why he did not and should not issue the warrants requested, and his challenge to our jurisdiction. We conclude that we did have jurisdiction to issue an alternative writ of mandate directed to the state auditor and that we do have jurisdiction to pass upon the reasons given by him as to why he should not issue the warrants as directed by that writ. We conclude, as heretofore indicated, that there is no merit in either of the reasons urged by him in justification of his refusal to issue the warrants. The warrants shall issue as directed by the writ.

HAMLEY, C. J., MALLERY, FINLEY, and OTT., JJ., concur.

WEAVER, J. (concurring in the result)—In order to decide whether

" . . . the contract between the state of Oregon, acting by and through its state highway commission, and the state of Washington, acting by and through its state highway commission and its toll bridge authority, is illegal and void in that the Oregon state highway commission has, without statutory authority, delegated to the Washington toll bridge authority 'the exclusive right to set, impose and collect tolls on said bridge or bridges, . . .' "

(as stated in the majority opinion), it is necessary to either decide or assume that the Oregon highway commission has the necessary Oregon statutory authority to bind the state of Oregon by this contract.

The majority opinion expressly makes this assumption, without deciding the question. If the assumption is correct (upon which I express no opinion), it may be that the collection of tolls is a ministerial function, the performance of which the Oregon state highway commission can delegate to the Washington toll bridge authority. If, on the other hand, the assumption is not correct, whether there is a delegation of nondelegable powers is of no moment.

We are not dealing with the rights of a nonresident party, who, having voluntarily submitted to the jurisdiction of this court, may have a judgment enforced against him in a foreign jurisdiction because of the full faith and credit clause of the Federal constitution. The problem requires a definition of the rights of another sovereign state as determined by its own legislative enactments.

This court should not presume to answer the subsidiary question of delegation of powers by assuming the validity of the contract as it applies to the state of Oregon. That problem can be solved only by the judiciary of Oregon.

Therefore, I concur in the result of the majority opinion, excluding from my concurrence any inference that I am passing upon the validity of the contract in so far as it binds the state of Oregon or its highway commission.

ROSELLINI, J., concurs with WEAVER, J.

SCHWELLENBACH, J. (dissenting)—I do not agree with the reasoning of the majority with respect to the contract between the state and Clark county. The 1927 act obligated

the state, after it acquired the portion of the bridge from Clark county, to operate it toll free. The act authorized the state to acquire Clark county's portion of the bridge either by purchase or condemnation. Being required to operate the bridge toll free, the state merely inserted that obligation, together with the sum of two hundred fifty thousand dollars, as the consideration for the purchase. Be that as it may, Clark county is not asserting any rights in this proceeding, and I do not believe that we should concern ourselves with this problem.

In order to better understand the question of delegation of nondelegable powers, raised by the auditor, I think it might be well to briefly outline the proposed project. The plan is to repair and remodel the existing bridge, and, parallel thereto, to construct another bridge, together with approaches thereto. Each bridge is to handle one-way traffic, that is, traffic from Vancouver to Portland will travel over one bridge and returning traffic will pass over the other. The cost of the project has been estimated at $14,000,000. The project is to be financed by the issuance of revenue bonds, to be secured by tolls collected from both bridges. The tolls "in no event shall be in an amount less than necessary to pay the principal and interest upon the bonds, costs of maintenance and operation of the new and existing bridges and toll plaza, and other costs incidental thereto, and to provide such debt service coverage and reserves that may be necessary for the bonds." The classification and amounts of tolls shall be determined between the parties to the contract (the Oregon highway commission, the Washington highway commission, and the Washington toll bridge authority). The contract then provides that, in case of disagreement between the parties as to the amount required for such purposes, the determination of the toll bridge authority as to the minimum amounts required shall be final.

The majority construes the contract to mean that the Oregon highway commission merely empowers the Washington toll bridge authority to determine certain facts, not to fix tolls. I cannot agree. That would be the situation

if the toll bridge authority were to investigate, find the facts, and report back to the other two parties to the agreement. But that is not what the contract provides. It provides that, if the parties do not agree "as to the amount required for such purposes," the toll bridge authority shall determine the minimum amounts required for such purposes, and its determination shall be final. When it determines such minimum amounts "required for such purposes," it, and not the parties to the agreement, determines the amounts of the tolls to be charged. That is not a ministerial function. The Oregon highway commission has delegated a nondelegable function to the Washington toll bridge authority.

I would deny the writ.

DONWORTH, J., concurs with SCHWELLENBACH, J.