THE STATE OF WASHINGTON, on the Relation of Jennie M. Tattersall, Appellant, v. CLIFF YELLE, as State Auditor, Respondent.[1]

---

[1] Reported in 329 P. (2d) 841.

*Kelly, O'Sullivan & Spiller,* for appellant.

*The Attorney General* and *Elvin J. Vandeberg, Assistant,* for respondent.

OTT, J.—Jennie M. Tattersall, a resident and taxpayer of this state, commenced this action to restrain the state auditor from issuing a warrant upon the state treasury for the purpose of defraying this state's portion of the operating costs of the Western Interstate Commission for Higher Education, as provided by Laws of 1955, chapter 214, p. 899.

Plaintiff challenged the validity of the act (upon the grounds which we will hereinafter discuss) and alleged that her demand upon the attorney general to institute this ac-

tion had been refused. From the judgment of the trial court denying the relief sought, the plaintiff has appealed.

Respondent moves to dismiss the appeal. He contends first that, since appellant has not alleged or proved that she has or will suffer special injury by the issuance of the warrants, she cannot maintain this action to enjoin the expenditure of state funds. In support of this contention, respondent cites *State ex rel. Juenemann v. Superior Court,* 157 Wash. 429, 289 Pac. 28 (1930); *State ex rel. Dunbar v. State Board of Equalization,* 140 Wash. 433, 249 Pac. 996 (1926); *State ex rel. Pierce County v. Superior Court,* 86 Wash. 685, 151 Pac. 108 (1915); *Bilger v. State,* 60 Wash. 454, 111 Pac. 771 (1910); *Birmingham v. Cheetham,* 19 Wash. 657, 54 Pac. 37 (1898); *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067 (1891).

These cases are not apposite for the reason that, subsequent to these decisions, the legislature, in 1935, enacted the declaratory judgment act. Our question here is: Does the declaratory judgment act grant to a resident taxpayer the right to test the constitutionality of an act, when the attorney general has declined to do so?

In *State ex rel. Lemon v. Langlie,* 45 Wn. (2d) 82, 88 *et seq.,* 273 P. (2d) 464 (1954), this court said, quoting with approval from *Reiter v. Wallgren,* 28 Wn. (2d) 872, 184 P. (2d) 571 (1947):

" 'We never have held that, in a proper case *where the attorney general refused to act to protect the public interest,* a taxpayer could not do so.'

"We then laid down this rule:

" 'In the absence of a statute governing suits by taxpayers, a demand upon the proper public officer to take appropriate action is a condition precedent to the maintenance of a taxpayer's action challenging the validity and legality of what public officers are intending to do or have done, unless facts are alleged which sufficiently show that the demand to bring suit would have been useless.' . . .

"The question involved in the *Reiter* case, *supra,* was whether a taxpayer could maintain an action against state officials involving a matter of public concern without having a direct pecuniary interest in the actions of the officials which were challenged by the suit. To decide that question, it was necessary for the court first to determine *whether*

*any taxpayer, under any circumstances, could maintain such a suit.* If that question had been answered in the negative, it would have disposed of the action completely.

"After consideration of the ten prior cases cited by the taxpayer involved in that case, this court answered the question in the affirmative. . . .

". . . Since, prior to instituting the present mandamus proceeding, they [relators] had demanded that the attorney general take legal steps to cure the alleged illegal actions on the part of respondents, and since the attorney general had refused to act, relators are entitled to bring this action, and thus they have capacity to sue."

In *Miller v. Pasco*, 50 Wn. (2d) 229, 231, 310 P. (2d) 863 (1957), we said:

". . . This is a declaratory judgment proceeding in which an act of the legislature is challenged as being unconstitutional. The uniform declaratory judgment act (RCW 7.24) specifies who may institute such proceedings.

"RCW 7.24.020 [*cf.* Rem. Rev. Stat. (Sup.), §784-2] provides in part:

" 'A person interested . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, . . . may have determined any question of construction or validity arising under the . . . statute, ordinance, . . . and obtain a declaration of rights, status or other legal relations thereunder.'

"RCW 7.24.050 [*cf.* Rem. Rev. Stat. (Sup.), § 784-5] provides in part:

" 'The enumeration in RCW 7.24.020 . . . does not limit or restrict the exercise of the general powers conferred in RCW 7.24.010, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.'

"RCW 7.24.120 [*cf.* Rem. Rev. Stat. (Sup.), § 784-12] provides:

" 'This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.'

"Applying the legislative mandate of liberal construction to the facts in this case, the record establishes that John L. Miller is a resident and taxpayer of Pasco, and otherwise meets the qualifications of an interested person, as defined by RCW 7.24.020, *supra.*"

■ We adhere to the interpretation, in the cited cases, of the declaratory judgment act, and hold that the act authorizes the appellant, as a taxpayer of this state, to challenge the constitutionality of chapter 214, since the attorney general has refused to do so.

Respondent's second argument in support of his motion to dismiss the appeal is that, since the subject of this action is the validity of an interstate compact, the Federal courts have exclusive jurisdiction to determine its constitutionality.

■ The issue raised by this proceeding is not one between the sovereign states which have entered into the compact, but one in which a taxpayer of one of the contracting states questions the right of the auditor of that state to transfer funds under the act.

This court considered a similar contention in *State ex rel. Oregon State Highway Comm. v. Yelle*, 47 Wn. (2d) 804, 807, 289 P. (2d) 1027 (1955), which decision is adverse to respondent's contention. In that case, we said:

"Passing the question of whether the jurisdiction of the United States supreme court is exclusive, we hold that this is not a controversy between states. . . . the only controversy is whether our state auditor is refusing to perform a duty which he can and should be compelled to perform. [Citing cases.] Quite clearly, this court has original jurisdiction in 'mandamus as to all state officers' (Washington state constitution, Art. IV, § 4) and can issue a writ of mandate to compel the issuance of the warrants to which reference has been made. The fact that the Oregon state highway commission is one of the parties seeking this writ of mandate to compel the auditor to perform what is claimed to be his duty, cannot make this proceeding a controversy between states."

Respondent's motion to dismiss the appeal is denied.

Appellant's first contention is that the legislature does not have authority, under the constitution, to enter into the interstate compact provided by chapter 214.

■ The state constitution is not a grant, but a restriction, of legislative power, and the power of the legislature to enact laws is unrestrained except where it is expressly

or inferentially prohibited by the state or Federal constitution.. *In re Bartz*, 47 Wn. (2d) 161, 287 P. (2d) 119 (1955); *Gruen v. State Tax Comm.*, 35 Wn. (2d) 1, 211 P. (2d) 651 (1949); *State ex rel. New Washington Oyster Co. v. Meakim*, 34 Wn. (2d) 131, 208 P. (2d) 628 (1949).

 Where there is no constitutional limitation upon the legislature to enter into compacts with sister states, all doubts must be resolved in favor of its power to do so. *Union High School Dist. No. 1, Skagit County v. Taxpayers of Union High School Dist. No. 1, Skagit County*, 26 Wn. (2d) 1, 172 P. (2d) 591 (1946), and cases cited. We do not find in the state constitution any limitation upon the power of the legislature to contract with its sister states. Art. I, § 10, of the Federal constitution, provides that states may enter into interstate compacts when authorized by Congress. Congress has approved the compact with which we are here concerned by chapter 380, 67 Stat. 490. Since there is no constitutional limitation upon the power of the legislature to contract in this regard, and Congress has consented thereto, we find no merit in appellant's contention.

Appellant next contends that chapter 214 delegates to the resident commissioners of this state, and to the interstate commission, legislative authority without adequate standards for the proper exercise of such authority, and that it therefore violates amendment 7 of the state constitution.

██ Appellant merely makes the averment of inadequate standards. She does not specify what legislative authority is granted to the commission or what necessary standards are lacking. Such averments do not raise a justiciable issue. *King County v. Port of Seattle*, 37 Wn. (2d) 338, 345, 223 P. (2d) 834 (1950); *Randles v. Washington State Liquor Control Board*, 33 Wn. (2d) 688, 206 P. (2d) 1209, 9 A. L. R. (2d) 531 (1949). See, also, *Gattavara v. Scheumann*, 51 Wn. (2d) 55, 315 P. (2d) 649 (1957).

Appellant next contends that the provision of the act making the commission a body corporate, with power to sue and be sued, is violative of Art. II, § 28, of the state constitution, which prohibits the enactment of private or special laws granting corporate powers or privileges.

■ We cannot agree with appellant's premise *that the commission is not a state agency.*

Article III of the compact provides that the commission "shall be a body corporate of each compacting state and territory and an agency thereof." Art. IX, § 1, of the state constitution, provides: "It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, . . ."

The commission performs a part of the obligation imposed upon the state by this constitutional mandate. In so doing, it is an agent of this state, and is not a private corporation having special powers and privileges. *State ex rel. Board of Comm'rs of Pierce County v. Clausen,* 95 Wash. 214, 163 Pac. 744 (1917). See, also, *West Virginia ex rel. Dyer v. Sims,* 341 U. S. 22, 95 L. Ed. 713, 71 S. Ct. 557 (1951).

Appellant's next two contentions will be discussed together, since they both relate to the meaning of the term, "public officer," as used in Art. III of the state constitution. Appellant contends (1) that chapter 214 violates Art. III, § 21, because it makes the attorney general of this state and the attorneys general of each of the other compacting states legal advisers to the commission, and (2) that it violates Art. III, § 25, of the state constitution, because some of the members of the commission are not qualified electors of this state.

■ Are the commissioners "state officers" or holders of "state offices," within the meaning of Art. III, §§ 21 and 25? The meaning of the term, "state officer," as used in the constitution, may vary according to the context in which it is used. See *In re Bartz, supra.*

Art. III, § 21, provides that "The attorney general shall be the legal adviser of the state officers, . . ."

Art. III, § 25, provides:

"No person, except a citizen of the United States and a qualified elector of this state, shall be eligible to hold any state office, . . . The compensation for state officers shall not be increased or diminished during the term for which they shall have been elected. . . ."

Art. III, § 1, provides:.

"The executive department shall consist of a governor, lieutenant governor, secretary of state, treasurer, auditor, attorney general, superintendent of public instruction, and a commissioner of public lands, who shall be severally chosen by the qualified electors of the state . . ."

Art. III, § 4, refers to the "officers named in the first section of this article." In regard to increasing or decreasing the compensation for "state officers," Art. III, § 25, quoted above, refers to "the term for which they shall have been elected."

Article IV of the compact provides that "The commissioners from each state and territory shall be *appointed* by the governor thereof as provided by law in such state or territory." (Italics ours.)

 We conclude that Art. III, §§ 21 and 25, apply only to the elected "state officers" named in Art. III, § 1. The commissioners, who hold appointive positions, are not state officers within the contemplation of these constitutional provisions.

Appellant next contends that, in so far as the compact has any purpose of marshaling the tax and other resources of this state for the benefit of individuals from other compacting states, it is violative of Art. VIII, § 5, of the state constitution, which provides:

"The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation."

 The legislature of this state has undertaken to carry out a part of its duty to educate all children residing within its borders by a reciprocal arrangement with its sister states. In return for this state's share of the operating costs of the interstate commission, it receives benefits in educational facilities for the residents of this state. The legislature, in the proper exercise of its discretion, has deemed the benefits received to be a sufficient consideration for the funds expended. The expenditure of funds for such purpose does not constitute the giving or loaning of the

credit of this state. *Roehl v. Public Utility Dist. No. 1 of Chelan County*, 43 Wn. (2d) 214, 261 P. (2d) 92 (1953); *Rands v. Clarke County*, 79 Wash. 152, 139 Pac. 1090 (1914).

Appellant next contends that the trial court erred in failing to enter conclusions of law with respect to the allegations of paragraphs Nos. 4a and 10a of her amended petition.

The court rules do not require that the trial court enter formal conclusions of law. Our consideration here relates solely to the correctness of the judgment entered by the trial court.

Paragraph No. 4a alleges that future legislatures are bound by the act and cannot withdraw from the interstate compact. This contention is without merit for the reason that what future legislatures will do with reference to this state's remaining in or withdrawing from the compact is not an issue in this proceeding.

Paragraph No. 10a alleges that the expenditure violates amendment 14 of the state constitution, in that it is not for a public purpose. We find no merit in this contention for the reason that the education of children residing within the borders of this state is an obligation of the state. Appropriations necessary to fulfill this obligation are for a public purpose.

For the reasons stated, the judgment is affirmed.

HILL, C. J., DONWORTH, FOSTER, and HUNTER, JJ., concur.

MALLERY, J. (concurring in the result)—Chapter 214, Laws of 1955, relates to the "Western Regional Higher Education Compact." It ratifies a compact between this and certain other states and territories. 67 Stat. 490 specifically gives the consent of the Congress to this compact. The statute in question provides the mechanics of this state's participation with the other members of the compact in co-operatively providing higher educational facilities for training doctors, veterinarians, etc., to serve the needs of the region covered by the compact. Many of the members do not have the potential students nor the financial resources to accomplish this purpose by themselves.

Relator petitioned for a writ of prohibition in January, 1956, to restrain the respondent state auditor from delivering a warrant drawn pursuant to chapter 214, Laws of 1955, on the ground that the law is unconstitutional. The case was tried on the merits, and relator appeals from a judgment for respondent.

This action has already delayed fulfillment of the state of Washington's obligation under the compact for about two and one-half years.

Respondent moved in this court to dismiss the action for the reason that appellant's petition does not state facts sufficient to constitute a cause of action, and that the court does not have jurisdiction of the subject matter of the action. This issue is properly before this court under Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953, which provides that this objection may be made at any time.

In appellant's petition the only allegations pertinent to her right to maintain the instant action are as follows:

"(13) That Jennie M. Tattersall, on whose relation this action is brought, is a *citizen, elector and taxpayer* of this state.

"(14) That heretofore and on January 4, 1956, demand was made in behalf of said relator upon the attorney general to institute an appropriate action against the state auditor and any other official involved, praying that the issuance of warrants under said chapter 214 be enjoined on the ground that the compact is invalid as contravening the federal and state constitutions; and that on January 10, 1956, the attorney general by letter declined to bring such action." (Italics mine.)

This is not a suit to enjoin the expenditure of public moneys in *violation* of a statute. Indeed, it is very clear that the expenditure in question is made pursuant to the statute. The purpose of the action is to invalidate the statute, and thus take the state out of the compact.

Neither the appellant's personal nor property rights are affected by the compact. She, therefore, cannot maintain her action under any common-law theory and must rely upon the declaratory judgment act to do so.

RCW 7.24.020, Rem. Rev. Stat. (Sup.), § 7.84-2, provides:

"A *person* interested under a deed, will, written contract or other writings constituting a contract, or *whose rights*, status or other legal relations *are affected by a statute*, municipal ordinance, contract or franchise, *may have determined any question of* construction or *validity arising under the* instrument, *statute*, ordinance, contract or franchise *and obtain a declaration of rights*, status or other legal relations thereunder." (Italics mine.)

To come under the statute, the appellant must specify what property or constitutional personal *right* of hers is *affected* by the statute. She, of course, cannot do so for the simple reason that she has none so affected, and it follows that she cannot maintain this suit under the declaratory judgment act for the mere purpose of challenging the constitutionality of the law. We made this clear in *Kahin v. Lewis*, 42 Wn. (2d) 897, 259 P. (2d) 420, wherein we said:

"This court has many times held that, in order to invoke the jurisdiction of the court under the declaratory judgment act, there must be an actual, existing *justiciable controversy* . . ." (Italics mine.)

*Political opposition* to a law does not constitute a *justiciable issue*. Many personal and property rights are guaranteed to individuals by our state constitution. The majority must respect these rights, and an individual can invoke the aid of the courts to defeat the political action of the majority whenever it attempts to destroy them.

However, when a dissident citizen asserts no constitutional right in a law, he is free to work politically for its repeal only. Specifically, he cannot implement his political opposition to a law by maintaining a court action to invalidate it. Such a suit, if it were to be successful, would, in the absence of a justiciable issue, be tantamount to a privately procured judicial veto. A justiciable issue is indispensable to the court's interposition in legislative matters under our constitutional form of a three-branch government. Indeed, this form would be unworkable if the courts repeatedly subjected the other branches of government to

the "law's delay" at the whim of every litigious member of a political minority.

We are not concerned in this case with the procedure to restrain public officials from violating existing laws or misappropriating public funds. Neither do we reach the question of the respondent's immunity from suit for, in any event, the consent of the sovereign to be sued does not affect the requirement that a plaintiff shall have a cause of action which presents a *justiciable issue* in order to maintain his action. The absence of a *justiciable issue* is determinative of this case. The motion to dismiss was well taken. We should not reach the merits of this case.

FINLEY, WEAVER, and ROSELLINI, JJ., concur with MALLERY, J.

